UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 12-cr-0293 (ADM/JJG) |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| Mark Matthew Cortes, | |
| Defendant. | |

JEANNE J. GRAHAM, United States Magistrate Judge

This matter came before the undersigned United States Magistrate Judge for a pretrial motion hearing on January 8, 2013. David P. Steinkamp appeared on behalf of the United States of America, and Manvir K. Atwal appeared on behalf of Defendant Mark Matthew Cortes ("Cortes"). With the Court's leave, Cortes filed a post-hearing memorandum on January 15, 2013, and the Government filed a post-hearing memorandum on January 22, 2013. The Court took the motions under advisement at that time. This case was referred to this Court for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.

The Court will address Cortes's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (ECF No. 13) and Motion to Suppress Statements, Admissions, and Answers (ECF No. 14) in this Report and Recommendation. The Court will address Cortes's nondispositive motions in a separate Order.

## I. FACTS INTRODUCED INTO EVIDENCE AT THE MOTION HEARING

The Government presented evidence at the motion hearing through the testimony of Special Agent Maureen Lese of the Federal Bureau of Investigation (FBI) and five exhibits: an Advice of Rights form dated October 24, 2012 (Gov't Ex. 1); an Advice of Rights form dated October 25, 2012 (Gov't Ex. 2); an Advice of Rights form dated November 14, 2012 (Gov't Ex. 3); a search warrant signed on October 23, 2012, and related paperwork (Gov't Ex. 5); and a search warrant signed on October 24, 2012, and related paperwork (Gov't Ex. 9).

### A. Special Agent Lese's Testimony

Special Agent Lese has worked for the FBI for more than twenty years. She currently investigates the sexual exploitation of children on the Internet, among other crimes. Special Agent Lese learned of Cortes's possible involvement in online child sexual exploitation from an investigation originating in Australia. The Australian investigation yielded emails from the account spydersays@gmail.com, which the FBI linked to Cortes and his home address in Hastings, Minnesota. Four emails sent from the account included images of a prepubescent female, whom Special Agent Lese later learned was Cortes' daughter. Three of the photographs depicted a penis next to the girl's mouth. The fourth photograph showed the girl holding a small vibrator next to her vagina.

Special Agent Lese obtained and executed a federal search warrant at Cortes's apartment in Hastings, Minnesota, at 12:45 p.m. on October 24, 2012 (*see* Gov't Ex. 5). Special Agent Lese knocked on the door, announced her presence and purpose, and either Cortes or his fiancée opened the door. Six or seven Hastings police officers assisted in the execution of the warrant, and all had their guns drawn and pointed at the door when it opened. Once the officers were inside the apartment, Special Agent Lese asked Cortes and his fiancée to sit on the couch, which

they did. Special Agent Lese explained that she had a federal search warrant related to a computer crime, that Cortes and his fiancée were not under arrest, and that they were free to stay inside the apartment or leave during the search. Special Agent Lese told Cortes she wanted to speak with him but that he was under no obligation to do so. Special Agent Lese was not in uniform, and she did not display her weapon. Cortes's demeanor was calm, and he appeared to understand Special Agent Lese. Cortes was not handcuffed or detained, and he did not attempt to leave.

Special Agent Lese asked Cortes if he would be willing to go to the Hastings Police Department, which was half a block away from the apartment, to talk about the investigation and the warrant. Cortes agreed and consented to a request by a Detective Nolan to pat-search him for weapons before they left the apartment. Nothing was seized from Cortes's person. Cortes, Special Agent Lese, and Detective Nolan then walked over to the police station. As they walked, they discussed Cortes's enlistment in the National Guard and his employment. Neither officer made any physical contact with Cortes, and he walked unrestrained.

As they entered the police station, Detective Nolan led Cortes and Special Agent Lese to an interview room near the internal offices and dispatch area. The room contained a table and four chairs. Cortes sat on one side of the table; Detective Nolan and Special Agent Lese sat on the other side. Cortes was chatty and appeared comfortable. Detective Nolan left the room to get some water, and Special Agent Lese placed two tape recorders on the table, informing Cortes she wanted to record the interview. Special Agent Lese summarized the events leading up to the interview and then read Cortes his *Miranda* rights from an Advice of Rights form (*see* Gov't Ex. 1). She asked Cortes if he was willing to answer her questions, and Cortes replied yes. Cortes read the waiver portion of the form aloud and signed it.

Over the next two and half hours, Special Agent Lese asked Cortes numerous questions. Cortes never asked for an attorney or to stop the interrogation. His demeanor remained mainly calm. Special Agent Lese did not make any promises. At the end of the interview, Special Agent Lese summarized what Cortes had told her and said that, based on the information obtained from Cortes and his daughter, he would be placed under arrest. Cortes was then arrested on state charges and held at the Dakota County Jail.

The next day, on October 25, 2012, Special Agent Lese visited Cortes at the jail to ask him some additional questions. Special Agent Robert Blackmore accompanied her, and both agents wore casual clothing. The interrogation occurred in an interview room at the jail. Before engaging in questioning, Special Agent Lese re-advised Cortes of his *Miranda* rights by reading them from a form (*see* Gov't Ex. 2). Cortes agreed to waive his rights and signed the waiver portion of the form. Cortes's demeanor was calm, conversational, and straightforward, and he appeared willing to talk. He did not remain silent or invoke his right to an attorney, and Special Agent Lese made no threats or promises. The interview lasted about ten minutes. Cortes was formally charged in state court the next day, on October 26, 2012, at his first appearance.

Cortes was subsequently charged in federal court and was taken into federal custody on November 14, 2012, by Special Agent Lese. She and another agent transported Cortes from the Dakota County Jail to the Minneapolis federal courthouse for his initial appearance. Special Agent Lese sat in the backseat of the squad car next to Cortes, who was handcuffed and wore a seatbelt, while the other agent drove. Special Agent Lese explained to Cortes what would happen at the federal courthouse and said she did not have any questions for him. As a precaution, however, she read a *Miranda* advisory to him. Special Agent Lese assumed that Cortes had been appointed an attorney to represent him in the state proceedings.

Cortes asked Special Agent Lese a question about the Dakota County charges, to which Special Agent Lese replied he would need to waive his rights before they could talk. Cortes said he would not waive his rights for fear his statement would be used against him. One to two minutes passed in silence, then Cortes asked about some items seized from his apartment. Special Agent Lese reminded him that he would have to waive his *Miranda* rights if he wanted to have a conversation with her. Another minute passed before Cortes said he wanted to waive his rights and talk. Special Agent Lese read the waiver aloud, but Cortes could not sign it because he was handcuffed. Cortes agreed to sign the waiver at the courthouse. Special Agent Lese did not ask Cortes any questions at first, but Cortes made comments such as he wanted counseling, he felt remorseful, and he had not touched his daughter in a long time. After they arrived at the federal courthouse, Cortes said he wanted to continue talking. Approximately thirty minutes had passed since they left the Dakota County Jail.

The FBI and U.S. Marshal's Service processed Cortes immediately after his arrival, and Special Agent Lese and Cortes resumed their conversation at about 9:25 a.m. in an interview room at the U.S. Marshal's holding facility. Special Agent Lese asked Cortes to sign the waiver on the Advice of Rights form, which he did (*see* Gov't Ex. 3). During the interview, Cortes gave additional information to Special Agent Lese. They spoke for about fifteen to twenty minutes. Cortes did not ask for an attorney or indicate whether he had an attorney. The tone and tenor of the conversation was calm and cooperative. Cortes asked Special Agent Lese to contact his mother and tell her about the federal charges, and Special Agent Lese agreed to do so.

**B.     The Search Warrant Signed on October 23, 2012**

United States Magistrate Judge Franklin L. Noel signed a search warrant on October 23, 2012, for a daytime search of 405 Vermillion Street, Apartment 1, Hastings, Minnesota 55033.

(Gov't Ex. 5.) The warrant authorized the seizure of computers, storage devices, documents, images, records, and other items related to child pornography. Special Agent Lese submitted a twenty-one page affidavit in support of the application for the warrant. The Court has reviewed the entire affidavit but will recount only selected facts here.

Special Agent Lese began by detailing her experience in investigating computer crimes and the online sexual exploitation of children. She explained at great length how computer technology and the Internet facilitate the production and distribution of child pornography. With respect to the investigation of Cortes, Special Agent Lese recounted the following information.

On March 1, 2012, an Australian citizen was arrested for the distribution of child pornography. An investigation of this person's email account revealed hundreds of emails sent to or from other individuals containing child pornography, including 111 emails sent to or from the United States. In reviewing the content of the emails, FBI Special Agent Daniel E. O'Donnell discovered several emails from a Google account, spydersays@gmail.com, containing child pornography. The name associated with the account was "mark cortes." Based on this information, Special Agent O'Donnell obtained and executed a search warrant on Google, Inc. for email content from the spydersays@gmail.com account. He obtained dozens of emails containing comments indicative of an interest in child pornography, as well as images depicting the anal, vaginal, or oral penetration of prepubescent females.

Email exchanges in November 2012 between the spydersays@gmail.com account and an email accountholder identified as "A" included comments about having sexual relations with the spydersays@gmail.com accountholder's daughter. The user of the spydersays@gmail.com account also sent to "A" three images of a penis penetrating the mouth of a prepubescent female wearing a red shirt. A fourth image depicted a prepubescent female, wearing the same red shirt

6

but naked from the waist down, holding a small blue vibrator against her vagina. "A" and the spydersays@gmail.com user exchanged several more images in January 2012 and September 2012.

Information obtained from Google and Comcast linked the spydersays@gmail.com account to Cortes and to two addresses: 8398 Jasmine Avenue South, Cottage Grove, Minnesota, 55016; and 405 Vermillion Street, Apartment 1, Hastings, Minnesota, 55033. Special Agent Lese verified that Cortes had previously lived at the Jasmine Avenue South address and presently lived time at the Vermillion Street address.

Special Agent Lese located photographs on Cortes's Facebook account of Cortes and a prepubescent female. Based on the similarity of facial features, Special Agent Lese believed the female was the same girl depicted in the sexually exploitative images emailed from the spydersays@gmail.com account.

### C. The Search Warrant Signed on October 24, 2012

Minnesota District Judge Shawn Moynihan signed a search warrant on October 24, 2012, for the seizure of bedding, sexual toys, blue bath towels, and a little girl's black and grey dress from 405 Vermillion Street, Apartment 1, Hastings, Minnesota, 55033. (Gov't Ex. 9.) Hastings Police Detective Katie Booth submitted the affidavit in support of the application.

Detective Booth first described her training and experience in investigating felony crimes including sexual assault and child abuse. She averred that on October 24, 2012, Hastings police officers assisted the FBI in the investigation of an individual suspected of producing child pornography. She identified the suspect as Cortes and identified the prepubescent female in the child pornography as ELHC. Detective Booth stated that a Dakota County Social Services officer interviewed ELHC, who said Cortes had sexually assaulted her by both penal and digital

penetration. ELHC also said that Cortes had asked her to wear a black and grey dress, ejaculated on blue bath towels, and asked her to use sexual toys.

Detective Booth further averred that on October 24, 2012, Cortes confessed to an FBI agent and a Hastings Police Department Detective that he had placed his penis in ELHC's mouth and photographed the act. The affidavit conveyed that Cortes and ELHC were related and lived together at the 405 Vermillion Street apartment. Detective Booth requested leave to seize the items ELHC described in the interview, as well as ELHC's bedding, which she explained could contain forensic evidence indicating illegal sexual activity.

## II. DISCUSSION

### A. Cortes's Statements

After hearing the Government's evidence introduced at the motion hearing, Cortes offered no particular grounds to suppress any of the three statements he made to Special Agent Lese. (Def.'s Mem. Supp. Mots. Suppress at 2, ECF No. 22.) He simply rested on the record. (*Id.*) Because Cortes did not withdraw his motion, however, the Court will briefly address the merits.

The Fifth Amendment privilege against self-incrimination requires a law enforcement officer to advise a person of certain rights before interrogating him in a custodial setting. *Miranda v. Arizona*, 384 U.S. 436, 439, 444-45 (1966) ("Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."). Here, Special Agent Lese properly advised Cortes of his *Miranda* rights before each of the three interrogations. The Advice of Rights forms she read to Cortes included the right to remain silent, the right to seek advice from an attorney before answering any questions, the

right to have a lawyer present during questioning, the right to an appointed attorney, the right to stop answering questions at any time, and the admonishment that anything he said could be used against him.

An individual may waive his *Miranda* rights as long as the waiver is intelligent, knowing, and voluntary. *Miranda*, 384 U.S. at 444. That is, the waiver must be "the product of a free and deliberate choice rather than intimidation, coercion, or deception" and made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Here, there is no evidence that Cortes's waiver was the product of intimidation, coercion, or deception by Special Agent Lese or any other law enforcement officer. Rather, he freely and deliberately chose to speak with Agent Lese on each occasion. Furthermore, based on the content of the Advice of Rights forms, Special Agent Lese's procedures, and Cortes's conduct and demeanor, the Court finds that Cortes was fully aware of his rights and the consequences of waiving them. Accordingly, the Court concludes that each waiver was made intelligently, knowingly, and voluntarily.

With particular respect to the November 14th statement, the Government voices its concern that a defendant in custody who has invoked his right to counsel may not be interrogated, citing *Edwards v. Arizona*, 451 U.S. 477 (1981), and *Arizona v. Roberson*, 486 U.S. 675 (1988). (Gov't's Mem. Opp'n Mots. Suppress at 6, ECF No. 23.) In *Edwards* and *Roberson*, the defendant expressed his desire to communicate with law enforcement only through his lawyer or with his lawyer present, which is not the situation here. Nothing in the record supports a finding that Cortes indicated he wanted to communicate with Special Agent Lese only through counsel or in the presence of his attorney.

The Government's argument does raise the specter of the Sixth Amendment, however, which "guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings," once such proceedings have been initiated. *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009). There is little evidence in the record before the Court concerning the state charges and proceedings, other than that Cortes was formally charged with a crime at a first appearance on October 26, 2012, and that he may have been appointed an attorney.

Post-indictment interrogation by a government agent is a critical stage of a criminal proceeding. *Id.*; *see Missouri v. Frye*, 132 S. Ct. 1399, 1405 (2012). As with *Miranda* rights, a defendant may waive his Sixth Amendment rights as long as the waiver is intelligent, knowing, and voluntary. *Montejo*, 556 U.S. at 786. The decision to waive the presence of counsel "need not itself be counseled." *Id.* A *Miranda* advisory typically will suffice, even though *Miranda* rights are rooted in the Fifth Amendment. *Id.* The appointment of counsel does not give rise to a presumption that a subsequent waiver of the right to counsel is invalid. *Id.* at 789. For the reasons discussed in connection with the advisement and waiver of Cortes's Fifth Amendment rights, the Court also finds that the advisement and waiver of Cortes's Sixth Amendment right to counsel were valid.

### B. The Search Warrants

Cortes challenges the federal search warrant as unsupported by probable cause, but he identifies no particular deficiencies with the supporting affidavit. (Def.'s Mem. Supp. Mots. Suppress at 2, ECF No. 22.) He challenges the state search warrant as also lacking in probable cause, arguing specifically that the supporting affidavit did not specify when ELHC gave her statement to the Dakota County Social Services officer, when the alleged sexual assaults occurred, and where the alleged assaults occurred. (*Id.*)

The Fourth Amendment requires a search warrant to be supported by probable cause to believe that contraband or evidence of a crime will be found in a certain location. U.S. Const. amend. IV; *United States v. Williams*, 477 F.3d 554, 557 (8th Cir. 2007). Probable cause exists when the totality of circumstances described in a supporting affidavit create "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The probable cause standard is a "practical, nontechnical concept[]," *Brinegar v. United States*, 338 U.S. 160, 176 (1949), which turns "on the assessment of probabilities in particular factual contexts," *Gates*, 462 U.S. at 231. The issuing judge must be mindful "that affidavits 'are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law have no proper place in this area.'" *Id.* at 235 (quoting *United States v. Ventresca*, 380 U.S. 102, 108 (1965)). Where the issuing court relies solely on an affidavit to determine whether probable cause exists for the warrant, the reviewing court may consider "only that information which is found within the four corners of the affidavit . . . in determining the existence of probable cause." *United States v. Leichtling*, 684 F.2d 553, 555 (8th Cir. 1982). In addition, the issuing judge's determination of probable cause must be given "considerable deference." *United States v. Palega*, 556 F.3d 709, 714 (8th Cir. 2009).

The Court finds the search warrant signed on October 23, 2012, supported by probable cause. The investigation described in Special Agent Lese's affidavit established a strong probability that evidence of child pornography would be found in Apartment 1 of the 405 Vermillion Street address. Special Agent Lese's affidavit established a nexus between child pornography and the computers, storage devices, documents, images, records, and other items to be seized. *See Warden v. Hayden*, 387 U.S. 294, 307 (1967). The affidavit also established a

nexus between the evidence and Cortes's residence. *See United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000). Accordingly, evidence seized pursuant to the October 23, 2012, search warrant should not be suppressed.

The search warrant signed on October 24, 2012, is also supported by probable cause. Detective Booth began the narrative portion of the affidavit by explaining that the Hastings Police Department had assisted the FBI that very day in its investigation of Cortes for the production of child pornography involving ELHC. The next paragraph imparted information about ELHC's conversation with the Dakota County Social Services officer. Although Detective Booth did not include the date of the interview, a common-sense reading of the entire narrative is that the interview occurred on or about October 24, 2012.

With regard to the unspecified location of the alleged assaults, the affidavit conveyed that blue bath towels, sexual toys, and a child's dress were used during the assaults. The affidavit also stated that ELHC and Cortes lived together in Apartment 1 of 405 Vermillion Street. It is reasonable to infer from these facts that the alleged assaults occurred at their home, and that the household items and clothing would still be in the home.

As to the affidavit's failure to include any timeframe for the alleged sexual assaults, the Court is somewhat troubled by this omission. However, the Court finds that probable cause is otherwise established by Cortes's statement to law enforcement officers on October 24, 2012, that he had placed his penis in ELHC's mouth and photographed the act. When determining whether information in an affidavit is stale, the Court considers "the nature of the crime being investigated and the property to be searched." *United States v. Stevens*, 439 F.3d 983, 988 (8th Cir. 2006). Here, the nature of the crime being investigated was the production of child pornography, and child pornography is frequently retained, *see United States v. Lemon*, 590 F.3d

612, 615-16 (8th Cir. 2010). In addition, the property to be searched was a residence shared by ELHC and Cortes, and the items to be seized included bedding, clothing, and towels, which are all items frequently retained in one's home.

Even if Detective Booth's affidavit lacked probable cause, the Court concludes that the evidence seized pursuant to the warrant would be admissible under *United States v. Leon*, 468 U.S. 897 (1984). A court must not suppress evidence where "an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *Id.* at 920. This good faith exception to the exclusionary rule applies unless (1) the issuing judge "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) the issuing judge "wholly abandoned his judicial role"; (3) the warrant is "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'"; or (4) the warrant is "so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Id.* at 923 (citations and quotation omitted).

None of these situations are present here. There is no evidence whatsoever that the issuing judge was misled by false information or abandoned the judicial role. The omissions were not so blatant that a belief in the existence of probable cause was entirely unreasonable, nor did the omissions render the warrant so facially imprecise that an executing officer could not have presumed it valid. Accordingly, the executing officers relied in good faith on the validity of the warrant, and the evidence seized pursuant to it should not be suppressed.

**III. RECOMMENDATION**

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant Mark Matthew Cortes's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (ECF No. 13) be **DENIED**; and

2. Defendant Mark Matthew Cortes's Motion to Suppress Statements, Admissions, and Answers (ECF No. 14) be **DENIED**.


Dated: January 25, 2013

                                              s/ *Jeanne J. Graham*

                                              JEANNE J. GRAHAM
                                              United States Magistrate Judge


**NOTICE**

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **February 8, 2013**. A party may respond to the objections within fourteen days of the objections being filed. Any objections or responses filed under this rule shall not exceed 3,500 words. The district judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall forfeit review in the United States Court of Appeals for the Eighth Circuit. Unless the parties are prepared to stipulate that the district judge is not required to review a transcript of the hearing in order to resolve the objections, the party making the objections shall timely order and cause to be filed within fourteen days a complete transcript of the hearing.